876 So.2d 1043 (2004)
Jack RIVERS, Appellant
v.
BOARD OF TRUSTEES, FORREST COUNTY AGRICULTURAL HIGH SCHOOL, Appellee.
No. 2003-CC-00943-COA.
Court of Appeals of Mississippi.
June 29, 2004.
*1044 Jerry A. Evans, Hattiesburg, attorney for appellant.
Moran M. Pope, Hattiesburg, attorney for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. This is an appeal by Jack Rivers from the decision of the chancery court affirming the decision of the Board of Trustees of the Forrest County Agricultural High School (Board, FCAHS) terminating the employment of Rivers, a teacher at the school. This action began when Kyle Noble, superintendent of the school, dismissed Jack Rivers by written notification. As statutorily provided, Rivers requested a hearing, and such hearing was started before a hearing officer procured by the Board. The hearing was held on June 10, August 7, and concluded on August 30, 2002. The hearing officer filed his report on October 8, 2002, which was duly considered by the Board of Trustees. On October 11, 2002, the Board unanimously voted to accept and uphold the recommendations of the hearing officer. Rivers appealed to the Chancery Court of Forrest County and on March 18, 2002, the chancellor affirmed the decision and order of the Board.

STATEMENT OF THE ISSUES
I. WHETHER THE PROCEDURES FOLLOWED BY THE BOARD OF TRUSTEES, FORREST COUNTY AGRICULTURAL HIGH SCHOOL, IN MAKING ITS DECISION TO TERMINATE THE EMPLOYMENT OF JACK RIVERS, UNDER STIGMATIZING CIRCUMSTANCES, WAS IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
II. WHETHER THE DECISION, TO TERMINATE THE EMPLOYMENT OF JACK RIVERS, WAS ARBITRARY OR CAPRICIOUS AND NOT FOUNDED UPON SUBSTANTIAL EVIDENCE.

FACTS
¶ 2. On March 20, 2002, M.C., a fifteen year old ninth grader at Forrest County Agricultural High School and two other female students went to see Charles Lewis, the principal of FCAHS. M.C. told Lewis that Jack Rivers, a teacher at FCAHS, had "touched her in the wrong way" earlier that day while she was in his class. After further inquiry, M.C. added that Rivers "put his hand on her leg, and then he started to move his hand up her *1045 leg, and then that is when she jumped up and went to get a journal." Lewis immediately sent M.C. to Reesa Parker (also referred to in the briefs as Resa), the school counselor, to talk about the incident further. Lewis then had Rivers brought to his office and proceeded to tell Rivers what had been alleged against him. Rivers immediately denied the allegations and explained that he sat beside M.C. and that he sat straddling a chair with the back of the chair to his chest. He additionally explained that he did not put his hand on M.C.'s leg but that when he got up from the chair he could have possibly touched her. Lewis then told Rivers to write down his version of what happened. After Parker's meeting with M.C., Parker went to Lewis and explained that the touching of Rivers which M.C. described "was not a brush type-brush by type of thing." She added further that the "touching" would have been a deliberate placement and movement from what M.C. demonstrated while in Parker's office. Additionally, M.C.'s subsequent written statement and her testimony at the hearing are consistent with what she told Lewis and Parker.
¶ 3. The following day Lewis started conducting an investigation into what happened. He started first with the students that sat near M.C. in River's classroom. After interviewing numerous students, male and female, three other female students, L.W., L.E., and E.C., told Lewis and Parker about similar incidents involving Rivers that they felt were inappropriate and each student gave a signed, written statement regarding the same.
¶ 4. On March 28, 2002, Kyle Nobles, Superintendent of FCAHS, met with Rivers and his wife and inquired about his side of the story. Rivers denied touching M.C. except to say that he might have brushed up against M.C.'s leg when he got up to leave. He did volunteer that M.C. had on a low-cut blouse on the day in question.
¶ 5. After talking with the students, Lewis and Rivers, Nobles decided to terminate Rivers's employment if he did not resign voluntarily. On April 2, 2003, when Rivers did not resign voluntarily, Nobles notified him that he was being dismissed from employment, subject to his right to a hearing.
¶ 6. At the same time Rivers requested a formal hearing, he also requested discovery of information and documents, some of which included:
(1) A detailed listing of all allegations made against Rivers that underlined the Board's decision to terminate, including the names, addresses, and telephone numbers of the persons who made the allegations,
(2) A complete copy of any minutes of meetings held by the Board regarding the termination of Rivers,
(3) A complete copy of the personnel file of Rivers,
(4) A complete copy of the student file of the person or persons who made the allegations against Rivers,
(5) A complete copy of the investigation of the allegations made against Rivers, including any and all statements (oral or written), reports, investigative notes, affidavits, or otherwise,
(6) The name, address, and telephone number of any person interviewed during the investigation of the allegations made against Rivers, and
(7) The name, address, and telephone number of any person or persons the School Board intends to subpoena or call as witnesses at the hearing.
¶ 7. Also requested, but separately, was Rivers's classroom files of individual students contained in a locked file cabinet, which contained test results and other related *1046 matters pertaining to individual students and a copy of his grade book.
¶ 8. FCAHS, through its attorney, refused to provide any of the requested discovery, but did provide the names of the adult witnesses and a brief summary of the proposed testimony of the four unidentified, minor, female students. In response to this denial, Rivers requested that the hearing officer direct the Board to provide the requested discovery. To this, the hearing officer denied Rivers's request stating that he had no authority to order such discovery.
¶ 9. A hearing on this case was conducted on June 10, 2002, over the objections of Rivers, who moved to exclude the testimony of the four minors and further objected that bifurcation of the hearing would not satisfy the problem. At the hearing, the Board called seven witnesses including: Charles Lewis, principal; Reesa Parker, counselor; M.C., minor female student; L.W., minor female student; L.E., minor female student; E.C., minor female student; and Kyle Nobles, superintendent.
¶ 10. On August 7, 2002, the hearing reconvened at which time Rivers called six witnesses including himself. At the conclusion of the hearing, the hearing officer affirmed the decision made by the Board.

STANDARD OF REVIEW
¶ 11. The standard of review of administrative agency decisions is "[a]n agency's conclusions must remain undisturbed unless the agency's order (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." Maxwell v. Miss. Employment Sec. Comm'n, 792 So.2d 1031, 1032(¶ 7) (Miss.Ct.App.2001).
¶ 12. A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Lastly, this Court must not reweigh the facts of the case or insert its judgment for that of the agency. Lewis v. Miss. Employment Sec. Comm'n, 767 So.2d 1029, 1030-1(¶ 9) (Miss.Ct.App.2000). Factual findings of the Commission's Board of Review, if supported by substantial evidence, will be upheld on appeal. Miss.Code Ann. § 71-5-531 (Rev.2000).

ANALYSIS
I. WHETHER THE PROCEDURES FOLLOWED BY THE BOARD OF TRUSTEES, FORREST COUNTY AGRICULTURAL HIGH SCHOOL, IN MAKING ITS DECISION TO TERMINATE THE EMPLOYMENT OF JACK RIVERS, UNDER STIGMATIZING CIRCUMSTANCES, WAS IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
¶ 13. The trial court referred to Mississippi Code Annotated section 37-9-109 which governs non-renewals and also lays down initiating requirements for actions of non-renewal. It provides in pertinent part:
An employee who has received notice under Section 37-9-105, upon written request from the employee received by the district within ten days of receipt of the notice by employee, shall be entitled to:
(a) Written notice of the specific reasons for non-employment, together with a summary of the factual basis therefor, a list of witnesses and a copy of documentary evidence substantiating the reasons intended to be presented at the hearing....
*1047 However, it is clear that the case sub judice is not a non-renewal action but is in fact a dismissal action, which is governed by Mississippi Code Annotated section 37-9-59. There is a clear and distinct difference, that is readily apparent, between section 37-9-109 and section 37-9-59 when examining the initial procedure required as to each. In dismissal actions, section 37-9-59, the clear and concise requirement as to initiating the action is that:
"Before being so dismissed or suspended any licensed employee shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges." (emphasis added).
If the employee avails himself of the option of a hearing, section 37-9-59 provides that such hearing shall be as prescribed in section 37-9-111 of the Mississippi Code. However, actions involving non-renewal, under section 37-9-109, do not specifically reference section 37-9-59.
¶ 14. The learned chancellor in this case aptly stated the meaning of the law when he opined in his ruling the following:
The Legislature of this State framed and enacted both the cited and quoted statutes, and the differing language of the two as to mandates is readily apparent. The plain language utilized in the two statutes, each dealing with a different action, is clear and unambiguous. Simply because the requirements in the non-renewal action are undeniably more stringent than in the dismissal action, it does not logically follow that the Legislature intended that the more stringent requirements of non-renewal be also applicable to the dismissal action. It is obvious that had the Legislature intended, or desired, the more stringent requirements of the non-renewal action to be also applicable to the dismissal action then the language to accomplish such intent or desire was available for use.
¶ 15. Since this Court cannot legislate or change those statutes already applicable to the subject matter in question, we can only decide cases on the law as written. Therefore, to resolve the confusion faced in this case, it is suggested that the state legislature make appropriate and necessary provision or amendment to the present statute, or by additional statute for disposition of "dismissal actions," so as to clarify this ambiguity.
¶ 16. The dissent, while telling of the majority's simplicity, confuses the reader by going through two more sections to achieve their desired result. However, the dissent fails to inform the reader that the end result involves the section for non-renewals. If it was not mentioned before, please let us mention it now  this case is not a non-renewal case but is in fact a dismissal. While we agree that for non-renewal cases the accused should get certain discovery and that section does provide for it, while the section on dismissals does not provide such for a hearing. If, as previously stated, the legislature wanted those evidentiary measures, they would have provided such in section 39-9-59, or at the very least referred the reader to the non-renewal section specifically.
¶ 17. In summary, the dissent cites certain sections under Title 37 which apply to non-renewal rather than dismissal which applies to the case sub judice. Such recitals of those sections circumvents the appropriate section which applies to dismissals, being section 39-9-59. The two procedures are totally different in nature and do not require the same procedures to be followed in order to achieve the appropriate result.
¶ 18. After careful consideration of the record in this case, and in light of the statutory requirements of *1048 Mississippi Code Annotated section 37-9-59 (dismissal actions), as well as the statutory requirements of Mississippi Code Annotated section 37-9-109 (non-renewal actions), together with case law cited by both parties, this Court is of the opinion that Rivers's assertion that his statutory and constitutional rights were violated is without merit.
II. WHETHER THE DECISION TO TERMINATE THE EMPLOYMENT OF JACK RIVERS WAS ARBITRARY OR CAPRICIOUS AND NOT FOUNDED UPON SUBSTANTIAL EVIDENCE.
¶ 19. In the case sub judice, the two principal actors have statements and testimony that are contradictory. M.C.'s testimony accuses Rivers of acting in a deliberate manner by placing his hand on her leg and proceeding to move his hand upward. She also stated that not only did she feel surprised and upset by Rivers's actions, but also uncomfortable as well. To escape the situation, M.C. quickly got up to retrieve a notebook and waited until Rivers left her module. M.C.'s story never changed in its description, and she continued to be forthright in the telling of her version of what occurred.
¶ 20. On the other side, Rivers, the accused, adamantly denied the allegations made against him and admitted that any touching that may have been made by him was unintentional and may have occurred in the normal course of his work, i.e., in assisting students at their respective work stations in the technology course he teaches.
¶ 21. Although there were no other witnesses to the incident in question, there was testimony in the record by other students, L.W., L.E., and E.C., that was corroborative of the testimony of M.C., specifically that Rivers has been observed by other witnesses in a physical posture near other female students where the appearance to the witness was that Rivers was looking, or attempting to look, down in the blouse or shirt of females and toward their breasts. There was also testimony of Rivers's touching or rubbing a female student on her neck and down onto the area of the collarbone.
¶ 22. It is clear that the decision of the Board of Trustees was supported by the evidence and that the Board met its burden of proving by substantial evidence, to satisfy the standard of review as set forth herein, that Rivers's actions constituted misconduct.
¶ 23. This Court, having reviewed the record, finds that the decision of the Board was supported by substantial evidence and will not be disturbed.
¶ 24. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. COST OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
THOMAS, LEE, AND MYERS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., SOUTHWICK, P.J., AND CHANDLER, J.
IRVING, J., specially concurring.
¶ 25. The majority, finding that Jack Rivers was not entitled to certain discovery requested by him, affirms the decision of the Board of Trustees of Forrest County Agricultural High School District terminating Rivers's employment with the school district. The dissent, finding that Rivers was entitled to the requested discovery that was not produced by the school district, would reverse and remand. It is my view that Rivers was entitled to limited discovery and that the discovery *1049 which he did receive substantially satisfied the due process and right of confrontation entitlements in employee dismissals under Mississippi Code Annotated section 37-9-59 (Rev.2001); therefore, I agree that the school district's termination of Rivers should be affirmed.
¶ 26. Both the majority and the dissent agree that the case before us is a dismissal under section 37-9-59 and not a nonreemployment under the Education Employment Procedures Law of 2001 (EEPL), Mississippi Code Annotated section 37-9-101 to 37-9-113 (Rev.2001). It is the view of the dissent that Rivers was wrongfully denied discovery since (1) dismissal hearings are required to be conducted pursuant to a section of EEPL, section 37-9-111, and (2) a nonrenewed employee under EEPL is entitled to certain discovery by virtue of section 37-9-109. On the other hand, it is the majority's view that the discovery mandated by section 37-9-109 applies only to nonreemployment cases.
¶ 27. Section 37-9-109 provides in pertinent part:
An employee ... shall be entitled to:
(a) Written notice of the specific reasons for nonreemployment, together with a summary of the factual basis therefor, a list of witnesses and a copy of documentary evidence substantiating the reasons intended to be presented at the hearing, which notice shall be given at least fourteen (14) days prior to any hearing ...;
(b) An opportunity for a hearing at which to present matters relevant to the reasons given for the proposed nonreemployment, including any reasons alleged by the employee to be the reason for nonreemployment;
(c) Receive a fair and impartial hearing before the board or hearing officer;
(d) Be represented by legal counsel, at his own expense....
Section 37-9-111(3) provides in part:
The employee shall be afforded an opportunity to present matters at the hearing relevant to the reasons given for the proposed nonreemployment determination and to the reasons the employee alleges to be the reasons for nonreemployment and to be represented by counsel at such a hearing. Such hearing shall be conducted in such a manner as to afford the parties a fair and reasonable opportunity to present witnesses and other evidence pertinent to the issues and to cross-examine witnesses presented at the hearing.
¶ 28. In my view, if we were to substitute the word "dismissal" for the word "nonreemployment" in the statute quoted above, we would identify the measure of due process and the level of confrontation which a school district must afford a dismissed employee, whether mandated to do so by EEPL, as the dissent contends, or by constitutional or decisional law not discussed in either the majority or dissenting opinion. Consequently, it seems to me that a school district is obligated to provide such discovery as is necessary to ensure that the dismissed employee enjoys the requisite due process and right of confrontation which are circumscribed by the quoted statutes.
¶ 29. I now look to see what information and opportunity were in fact provided to Rivers. In the dismissal letter sent to Rivers, Superintendent Kyle Nobles advised:
Pursuant to Miss.Code Ann. section 37-9-59 I am dismissing you for immoral conduct and other good cause. Specifically, you improperly touched female students, and you engaged in conduct such as looking down female students' blouses and went into the audio visual *1050 room with a single female student and closed the door.
¶ 30. In response to a letter from Rivers's counsel requesting a hearing and certain information, the district, through its counsel, advised that the minors, who made the allegations, would testify at the hearing. The district refused to give the names, as well as the written statements of the minors involved, but provided the following excerpts of what the minors would testify to:
(A) Student A, a female student, will testify that she was seated at her computer module when Mr. Rivers came over to the module and pulled up a chair to sit beside her. He was talking to her and put his hand on her leg and moved his hand up and down on her leg. Feeling very uncomfortable, she got up to get her notebook, and then waited until he left and went back to her seat. He then came over again. Another student needed help and he went to help that student. He then came back to Student A's module, but it was time to leave the class. She reported this incident to the principal, and she was permitted to stay with the school counselor during Mr. Rivers's subsequent classes until he left the school.
(B) Student B, a female student, will testify that on more than one occasion Mr. Rivers has rubbed her neck with his hand, down to and including her collarbone, while she was seated at her computer module. She will testify that this action frightened her. She will also testify that she saw Mr. Rivers rub other girls' necks in a similar manner on at least two other occasions. In addition, she will testify that she saw Mr. Rivers go into the audio-visual room with a female student (Student D) by herself.
(C) Student C, a female student, will testify that while Mr. Rivers has never touched her in an inappropriate way, he gets too close when talking to her and makes her feel uncomfortable. Mr. Rivers "bends over as if he is looking down my shirt," and she has seen him looking down other girls' shirts at least twice. Also, she has seen him looking at her legs in a way that makes her feel uncomfortable.
(D) Student D, a female student, will testify that Mr. Rivers would touch girls while reaching around and over them as they were seated at the computer module when they asked for help with the computer. This has happened to her and at least five other female students that she knows in his classes. She will testify that rather than reaching around and over them, he could easily have asked them to get out of their chairs while he showed them on their computers what needed to be done. She will also testify that on more than one occasion she has seen him drop things on the floor (not accidentally) and would then try to look at girls' legs or skirts in an inappropriate manner. She will also testify that she has been with him in the audio-visual room by herself, and that while there he would rub against her arm while he was demonstrating how to do something on the module there.
The district did provide the names, title or position, address and telephone numbers of the other witnesses who the district said it might call at the hearing. These were the superintendent, building principal, and counselor.
¶ 31. In addition to refusing to provide the names and statements of the minor children involved, the district refused to provide files, addresses, and telephone numbers of the students who made the allegations. The district also refused to provide the grade book along with the *1051 classroom files of the students in Rivers's class.
¶ 32. Rivers's counsel also asked for "a complete copy of the investigation of the allegations made against Mr. Rivers, including any and all statements (oral or written), reports, investigative notes, affidavits, or otherwise." While the district responded that it would not turn over this information, the record reflects that the district's investigative file contained only the oral and written statements of the minor children, the summaries of which were given to Rivers.
¶ 33. During the dismissal hearing, the district presented seven witnesses: the four minor females, the principal, the counselor, and the superintendent. As already pointed out, the names, titles, telephone numbers and addresses of all of these witnesses, except for the minor females, were given to Rivers's counsel prior to the hearing.
Notwithstanding the election by an employee for a public hearing, any testimony by minor witnesses must be held in executive session and considered confidential personnel records and confidential student records, subject to an expectation of reasonable privacy and confidentiality. Public disclosure of these records may be by court order only.
Miss.Code Ann. § 37-9-111(2) (Rev.2001).
¶ 34. It seems to me that, although the quoted portion of subsection (2) of section 37-9-111 deals with the treatment of the testimony of minors during an actual hearing, it is persuasive authority for the proposition that school districts are prohibited from providing, even for hearing purposes under section 37-9-111(2), the personnel files of students who have accused a teacher of misconduct. And on the matter of disclosure of student personnel files, I note that section 37-15-3 of the Mississippi Code of 1972 as annotated and amended prohibits the disclosure of student cumulative folders to the public. Further, I find nothing in EEPL which requires or permits a school district to disclose the files of non-accusing students to a person facing dismissal under 37-9-59 for improper conduct with other students. Nor do I find that the district's failure to turn over such files, or the legislature's failure to require that such files be disclosed in termination hearings, offends notions of fair play, due process, or the right of confrontation.
¶ 35. I do believe, however, that Rivers was entitled, prior to the hearing, to the names of his student accusers, as well as a copy of the statements that they gave to school officials. Yet, at the same time, I find that, based on the detailed summaries of the witnesses' testimony which were provided, Rivers could determine the identity of the students involved if in fact he was guilty of the allegations made against him, and if he were not guilty, I fail to see how prior knowledge of the names of his accusers would have aided his defense that he was innocent of the allegations. On this point, it is noteworthy that Rivers does not show how his defense was negatively impacted, if indeed it was, as a result of his not being provided the names of his student accusers before the hearing, nor does he state what he would have been able to do to his advantage had he been provided their identities prior to the hearing. He certainly was able to confront and cross-examine them during the hearing.
¶ 36. In summary, I find that Rivers was provided, prior to the hearing, everything that he was entitled to receive except the names of the student witnesses, along with a copy of their statements.[1] However, *1052 I do not believe that he has shown any prejudice flowing from the school district's refusal to provide this information prior to the hearing inasmuch as he was able to determine the identity of the students from the information that was provided. Further, the statements were made available during the witnesses' testimony prior to cross-examination by Rivers's counsel. I find nothing in the record which remotely suggests that Rivers's cross-examination of the student witnesses was abridged or hampered as a result of the tardy submission of the students' statements to him. Under these circumstances, I do not believe Rivers was denied due process or his right of confrontation. Therefore, I see no basis for disturbing the decision terminating Rivers's employment.
¶ 37. My view, that Rivers was not denied his right to due process and his right to confront and cross-examine his accusers, should not be taken to mean that I approve of the district's refusal to divulge the names and statements of Rivers's accusers to him prior to trial. The district certainly erred in this regard, but its error did not result in Rivers's being denied a fundamentally fair hearing.
GRIFFIS, J., dissenting.
¶ 38. Because I am of the opinion that Jack Rivers' statutory right to a fair hearing was violated, I respectfully dissent.
¶ 39. The majority correctly notes that this is a dismissal action. Dismissal actions are governed by Mississippi Code Annotated Section 37-9-59 (Rev.2001), which provides in pertinent part:
For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any licensed employee in any school district. Before being so dismissed or suspended any licensed employee shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges.... The school board, upon a request for a hearing by the person so suspended or removed shall set a date, time and place for such hearing which shall be not sooner than five (5) days nor later than thirty (30) days from the date of the request. The procedure for such hearing shall be as prescribed for hearings before the board or hearing officer in Section 37-9-111....

(emphasis added). Here, we are called upon to decide whether the proper procedure was followed.
¶ 40. In Merchant v. Bd. of Trustees of the Pearl Mun. Separate Sch. Dist., 492 So.2d 959, 961 (Miss.1986), the supreme court recognized that Section 37-9-59 dismissal hearings must comply with Section 37-9-111. The court held that Section 37-9-111(4) required the school board to provide the employee with written notification of its decision and the reasons supporting the decision. The court further determined that appeals were to be taken based on the procedure established in Mississippi Code Annotated Section 37-9-113, which limited appellate review to a review of the record of the hearing to determine whether the decision was (a) not supported by any substantial evidence; (b) arbitrary or capricious; or (c) in violation of some statutory or constitutional right of the employee. Merchant, 492 So.2d at 961.
*1053 ¶ 41. To determine the proper construction of statutes, our supreme court outlined the following procedures for us to follow:
We construe such a statute according to familiar principles. We give the statute that reading which best fits the legislative language and is most consistent with the best statement of policies and principles justifying that language. Warren County v. Culkin, 497 So.2d 433, 436 (Miss.1986). We seek no historical fact. "We do not inquire what the legislature meant; we ask only what the statute means." Holmes, Collected Legal Papers 207 (1920). We afford the statute the best fit reading it may be given today. We seek the best statement of policies and principles which may justify the statute today, not in 1970 when it was originally enacted. We also afford the statute that reading most coherent in principle, given the entire statutory scheme and the other valid rules in the field. McIntire v. Moore, 512 So.2d 687, 689 (Miss.1987).
Mississippi Ins. Guar. Ass'n v. Vaughn, 529 So.2d 540, 542 (Miss.1988). Thus, we look to the language used in the statute to determine its meaning, and we must apply the statute in a logical and reasonable manner consistent with the statutory structure. Id.
¶ 42. The majority finds that it was not error for the board and the hearing officer to refuse to provide Rivers the minimal discovery he requested. After a proper request and a motion to compel the production of such information, the hearing officer concluded that Section 37-9-111 did not authorize him to order the production of information by the school district. Rivers contends that this was error because he was entitled to certain discovery under Section 37-9-109. Thus, Rivers correctly argues that the hearing officer's decision violated his statutory rights. The majority concludes that since Section 37-9-59 does not specifically refer to Section 37-9-109, then Rivers is not entitled to the information that is required to be provided to employees under Section 37-9-109.
¶ 43. Likewise, my conclusion is equally simple. However, my conclusion requires that we logically consider the specific language of Section 37-9-111 that refers to the rules and procedures that govern a dismissal hearing.
¶ 44. The majority and I agree that Section 37-9-59 is the proper statute for dismissal actions. Section 37-9-59 specifically provides that "[t]he procedure for such hearing shall be as prescribed for hearings before the board or hearing officer in Section 37-9-111." Thus, we look to Section 37-9-111 to determine the type of hearing that is to be held and, more importantly, what rules or procedures are to be followed.
¶ 45. Section 37-9-111(6) provides:
In conducting a hearing, the board or hearing officer shall not be bound by common law or by statutory rules of evidence or by technical or formal rules of procedure except as provided in Sections 37-9-101 through 37-9-113, but may conduct such hearing in such manner as best to ascertain the rights of the parties; however, hearsay evidence, if admitted, shall not be the sole basis for the determination of facts by the board or hearing officer.
(emphasis added). Thus, according to the express language of Section 37-9-111, the hearing must follow the procedural rules the legislature codified under the Education Employment Procedures Law of 2001, Mississippi Code Annotated Sections 37-9-101 through 37-9-113.
¶ 46. Section 37-9-109 is one of the procedural rules under the Education Employment *1054 Procedures Law of 2001. In relevant part, Section 37-9-109 provides:
An employee who has received notice under Section 37-9-105, upon written request from the employee received by the district within ten (10) days of receipt of the notice by the employee, shall be entitled to:
(a) Written notice of the specific reasons for nonreemployment, together with a summary of the factual basis therefor, a list of witnesses and a copy of documentary evidence substantiating the reasons intended to be presented at the hearing, which notice shall be given at least fourteen (14) days prior to any hearing; if the district fails to provide this information to the employee, then the recommendation for nonreemployment shall be null and void, and the board shall order the execution of a contract with the employee for an additional period of one (1) year;
(b) An opportunity for a hearing at which to present matters relevant to the reasons given for the proposed nonreemployment, including any reasons alleged by the employee to be the reason for nonreemployment;
(c) Receive a fair and impartial hearing before the board or hearing officer;
(d) Be represented by legal counsel, at his own expense.
¶ 47. Since a dismissal under Section 37-5-59 obligates the school district to provide the employee with a hearing under Section 37-9-111, and Section 37-9-111 specifically provides that the procedural rules include a provision (Section 37-9-109) that obligates the school district to provide certain minimal information to the employee prior to the hearing, then there is no reason or need for the legislature to amend Section 37-5-59 to make a direct reference to Section 37-9-109. The express language of Section 37-9-59, by requiring a Section 37-9-111 hearing, accomplished the same feat.
¶ 48. Applying this statutory structure to Rivers' dismissal, I offer the following analysis. Section 37-9-59 allows the board to dismiss Rivers for cause, after a hearing is held in accordance with Section 37-9-111. Section 37-9-111 sets forth how the hearing will be held, including the procedure to be followed. Section 37-9-111(6) provides that Section 37-9-109 is one of the procedural rules that apply to the hearing. Section 37-9-109 provides that Rivers is entitled to certain information prior to the hearing.[2] This information was not provided to Rivers, after his timely request.
¶ 49. The hearing officer conducted the Section 37-9-111 hearing in compliance with only part of the statutory scheme. The hearing officer and the board denied Rivers the information he had requested. The result was that the hearing began before Rivers received the information he was statutorily entitled to receive. Indeed, he was not even aware of the identity of the four primary witnesses who would testify against him.[3]
*1055 ¶ 50. Further, Section 37-9-111(3) provides in pertinent part:
The employee shall be afforded an opportunity to present matters at the hearing relevant to the reasons given for the proposed nonreemployment determination and to the reasons the employee alleges to be the reasons for nonreemployment and to be represented by counsel at such a hearing. Such hearing shall be conducted in such a manner as to afford the parties a fair and reasonable opportunity to present witnesses and other evidence pertinent to the issues and to cross-examine witnesses presented at the hearing.

(emphasis added). This statutory language clearly contemplates that the hearing will be conducted with, at a minimum, the disclosure of the information required under Section 37-9-109.
¶ 51. Prior to the hearing, Rivers submitted a request for discovery of relevant information and documents. The board refused to produce the information and documents. The board did, however, provide Rivers with a brief summary of the proposed testimony of four unidentified minor students who accused him of wrongdoing.
¶ 52. Rivers asked the hearing officer to compel the discovery that he had requested. The hearing officer refused, concluding that Section 37-9-111 did not authorize him to order the requested discovery. As a result, Rivers now complains that he was not able to properly defend himself through the immediate cross-examination of the witnesses who accused him of wrongdoing. The board's response is that Rivers could have subpoenaed the witnesses when the hearing resumed two months later. The hearing officer's failure to order the production of the information and documents, statutorily required under Section 37-9-109, unduly prejudiced Rivers' ability to defend himself against these serious charges.
¶ 53. While I certainly do not condone the conduct that is alleged, I am of the opinion that Rivers was denied his statutory rights. Contrary to the majority's assertion, I do not consider this to be judicial legislation or an attempt to change the law enacted by the Mississippi legislature. Instead, I am of the opinion that the chancellor and the majority simply failed to require the board to follow the clear and simple statutory structure that was enacted in Section 37-9-59, which by specific reference was to be conducted under the procedures included in the Education Employment Procedures Law of 2001, codified in Sections 37-9-101 through 37-9-113.
¶ 54. For these reasons, I would reverse the chancery court's decision and remand for further proceedings.
KING, C.J., SOUTHWICK, P.J., AND CHANDLER, J., JOIN THIS SEPARATE OPINION.
NOTES
[1] The dissent says that the "hearing officer's failure to order the production of the information and documents, statutorily required under section 37-9-109 unduly prejudiced River's ability to defend himself. However, the dissent does not specify which documents were required to be produced that were not produced. Clearly, section 37-9-109 does require the production of much of what Rivers requested.
[2] Section 37-9-109(a) specifically describes the information that Rivers was legally entitled to receive from the board. Thus, Rivers should have been provided some, but not all, of the information that he requested. Indeed, I do not find that Rivers should have been provided a copy of the student file of the person who made the allegations against Rivers.
[3] In his special concurring opinion, Judge Irving agrees with me that, "Rivers was entitled to the names of his student accusers, as well as a copy of the statements that they gave to school officials, prior to the hearing." Nevertheless, Judge Irving finds that the summaries should have been sufficient for Rivers to determine the identity of the accusers. Surely, if Rivers was guilty of the conduct they accused him of, he may have been able to identify the accusers. Assuming, however, that he was innocent of the charges, these descriptions would not be sufficient to identify the accusers since they do not indicate a certain date, time, or place when these events purportedly occurred. Rivers was prejudiced because he lacked the opportunity and ability to conduct a thorough cross-examination of his accusers.